[No. D047895. Fourth Dist., Div. One. June 25, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO CABRERA, Defendant and Appellant.

## COUNSEL

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda Cartwright-Ladendorf and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENKE, J.**—The appellant in this case was convicted of a number of crimes, including forcible rape, kidnapping, carjacking and infliction of corporal punishment. His convictions arose out of two separate and violent assaults he committed against his former girlfriend after she broke off their relationship.

Because there is sufficient evidence in the record to support the rape conviction, we reject appellant's contention the trial court erred in denying his pretrial motion to dismiss the rape allegation. We also reject his contention the trial court erred in preventing him from offering a "claim-of-right" defense to the carjacking allegation. Carjacking, as defined by the Legislature, is a crime against possession, not ownership. Finally, we reject appellant's contention that in allowing the admission of evidence of prior acts of domestic violence, the trial court infringed on his right to due process or otherwise abused its discretion.

The People concede the trial court did err in sentencing appellant on the corporal punishment charge; accordingly, we order the abstract of judgment be corrected and in all other respects affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant and defendant Francisco Cabrera and Claudia T. began a romantic relationship in 2003. Because Claudia discovered appellant was seeing another woman, Claudia attempted to end the relationship in November 2004 and again in January 2005. Claudia was afraid of appellant, and in February and March 2005 she took measures to prevent appellant from finding her, including storing her car at a friend's house because she was afraid appellant might see her in it.

On March 23, 2005, appellant found Claudia at a carwash in San Diego. After climbing inside Claudia's car and talking to Claudia for a while, appellant forced Claudia into the passenger seat and drove Claudia's car to a motel in Tijuana. During the trip to Tijuana, appellant threatened to stab Claudia, and when they reached the motel, appellant forced Claudia to go into a room and undress. Appellant undressed and lay down on top of Claudia. Claudia told appellant to stop; however, while appellant was on top of Claudia, he partially inserted his penis in her vagina. Claudia screamed and appellant stopped. Because Claudia wanted to get appellant off her, she began "sweet-talking" appellant and told him they could get back together. Appellant eventually drove Claudia back to the carwash, and on two additional occasions Claudia met appellant. According to Claudia, she met with appellant because she wanted to convince him that she no longer loved

him and that she wanted to end their relationship. Her efforts at ending the relationship peacefully were not successful.

On April 1, 2005, Claudia went to the Chula Vista police and reported the events of March 23, 2005. At that point Claudia was afraid of appellant and was planning to move. In addition to reporting the assault of March 23, Claudia reported appellant was constantly calling her and driving by the house where she was staying.

On the morning of April 6, 2005, Claudia found appellant sitting in the backseat of her car. When Claudia started screaming, appellant got out of the car, grabbed Claudia, twisted her shirt collar, punched her in the chin and forced her into her car. Neighbors who witnessed the incident called police. Appellant and Claudia struggled in the car, and appellant started driving in a somewhat circuitous route toward the San Ysidro border crossing. The car was stopped at the border by police officers. Appellant attempted to flee on foot and was apprehended. As appellant was booked into jail, a police officer asked him whether he had taken Claudia against her will. Appellant replied: "Yes, but I didn't know it was kidnapping for an adult."

The district attorney filed an information against appellant, alleging he was guilty of forcible rape, two counts of kidnapping, making a criminal threat, carjacking and inflicting corporal punishment on a roommate. The information further alleged appellant had a prior record which included convictions for domestic violence.

Prior to the preliminary hearing, appellant called Claudia from jail and apologized. Appellant stated: "Look, forgive me. I love you a whole lot. What I did, I did it because I love you a whole lot and I wanted . . . to fix the whole, the, the situation with us. I don't know what to do. . . . . [T]hey want to give me ten years. I want you to help me in court." Appellant then asked Claudia to testify that she had just been mad at him. Appellant's call was recorded and at trial the prosecution played it for the jury.

At the preliminary hearing and at trial, Claudia in fact altered her previous recapitulation of the events of March 23. At the preliminary hearing, Claudia acknowledged she initially told police officers appellant raped her, but testified the sex was consensual and that at the time she spoke to police officers, she was just mad at appellant.

At the conclusion of the preliminary hearing, the magistrate declined to bind appellant over on the rape allegation, but did bind appellant over on all

the remaining allegations of the information. The magistrate stated: "I'm not making a factual finding. I just think I wouldn't want to stand in front of a jury and say that she was raped if I were a prosecutor. Who knows what the truth really is? Only two of them were in the room, and only they know. So I'm not making a factual finding as to that.

"But I am saying that the evidence is insufficient for me to not even a threshold amount of believability as far as I'm concerned that she was raped. But maybe she was. I don't know. . . . She could have been."

Following the preliminary hearing, the district attorney refiled the information and again included the rape allegation. Appellant moved under Penal Code[1] section 995 to dismiss the rape allegation, and the trial court denied his motion. Prior to trial appellant did not challenge the trial court's ruling on his motion.

With respect to the carjacking allegation, at trial appellant attempted to show he was a part owner of Claudia's car. The trial court disallowed the claim of right defense.

In support of its case, the prosecution offered testimony from two of appellant's former girlfriends who had been subject to domestic abuse. The testimony was admitted under the provisions of Evidence Code section 1109.

Appellant was convicted on all counts. The trial court sentenced appellant to a term of 15 years to life on the rape conviction plus a five-year consecutive sentence on the carjacking conviction. The court imposed no term on one of the kidnapping convictions because it had been used to enhance the rape sentence. The trial court imposed sentence on the remaining counts, including a four-year sentence on the corporal punishment conviction, but stayed each of them under section 654.

## DISCUSSION

### I

Appellant argues the trial court erred in denying his motion to dismiss the rape allegation. Appellant contends that, notwithstanding the magistrate's statement to the contrary, the magistrate made a factual finding Claudia engaged in consensual sex with appellant on April 23. Thus, appellant argues, the district attorney could not refile the rape charge. (See *People v. Farley* (1971) 19 Cal.App.3d 215, 221 [96 Cal.Rptr. 478].)

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Where a defendant fails to challenge the trial court's ruling on a motion to dismiss before trial and thereafter the defendant is convicted of the subject crime on sufficient evidence, the trial court's pretrial ruling is no longer subject to review. "[E]ven an erroneous denial of a section 995 motion justifies reversal of a judgment of conviction only when a defendant is able to demonstrate prejudice at trial flowing from the purportedly inadequate evidentiary showing at the preliminary hearing. [Citations.] Defendant has not made such a showing here. Where the evidence produced at trial amply supports the jury's finding, any question whether the evidence produced at the preliminary hearing supported the finding of probable cause is rendered moot. Even ' " '[i]f there is insufficient evidence to support the commitment, the defendant cannot be said to be prejudiced where sufficient evidence has been introduced at . . . trial' " ' to support the jury's finding as to the charge or as to the truth of the allegation. [Citations.]" (*People v. Crittenden* (1994) 9 Cal.4th 83, 136–137 [36 Cal.Rptr.2d 474, 885 P.2d 887]; see also *People v. Gaio* (2000) 81 Cal.App.4th 919, 936 [97 Cal.Rptr.2d 392].)

Here, sufficient evidence of rape was presented at trial. In particular, in initially reporting the events of March 23 to police, Claudia stated that before appellant inserted his penis in her vagina she told him to stop. This version of events was corroborated by appellant's phone call to Claudia after his arrest in which he apologized for what he did, told her he faced 10 years in prison and then asked her to tell police she was mad at him. The jury could reasonably interpret appellant's apology and request for help from Claudia as an acknowledgement by appellant that the most serious charges against him were true. Because the prosecution presented sufficient evidence of rape at trial, appellant cannot show that he was in any material manner prejudiced by the trial court's earlier ruling on appellant's section 995 motion. (*People v. Crittenden, supra,* 9 Cal.4th at p. 137.)

II

The crime of carjacking is set forth in section 215, subdivision (a): " 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent *to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession,* accomplished by means of force or fear." (Italics added.)

Appellant contends the trial court erred in preventing him from offering a claim of right defense to the carjacking allegation. Although the issue has not

yet been confronted directly by our Supreme Court, in her concurring opinion in *People v. Montoya* (2004) 33 Cal.4th 1031, 1036–1038 [16 Cal.Rptr.3d 902, 94 P.3d 1098], Justice Werdegar rejected the appellant's contention that, like robbery, the crime of carjacking is subject to a claim of right defense. We are persuaded by Justice Werdegar's reasoning.

By way of background, in *People v. Tufunga* (1999) 21 Cal.4th 935, 949–950 [90 Cal.Rptr.2d 143, 987 P.2d 168], the court held that under section 211, a claim of right continues, as at common law, to constitute a defense to robbery. The court noted that at common law a claim of right was recognized as a defense to both larceny and robbery. The defense was permitted as to larceny because it negated the required intent to steal and as a defense to robbery because robbery was recognized as an aggravated form of larceny. The court further noted that in enacting the statutory versions of larceny and robbery the Legislature required in both instances a "felonious taking." The court found that in adopting this common law requirement for both crimes the Legislature intended to continue the common law elements of both crimes and their common law defenses. (*Id.* at p. 950.)

■ Although carjacking also requires a "felonious taking," Justice Werdegar noted the crime is otherwise quite distinguishable from robbery: "In *Tufunga*, as discussed, we held that in adopting the phrase 'felonious taking' in the robbery and theft statutes, the Legislature intended to incorporate into those statutes the common law meaning of the phrase. (*Tufunga, supra*, 21 Cal.4th at p. 946.) To extend that holding so as to govern carjacking, also defined as a 'felonious taking,' would run contrary to the legislative intent underlying the enactment of the carjacking statute. The plain language of that statute, wherein the word 'possession' is thrice repeated, makes that intent evident. Carjacking is defined as the taking of a vehicle from 'the possession of another' with the intent to deprive the person 'in possession' of his or her 'possession' (Pen. Code, § 215, subd. (a)). To require for a carjacking conviction, as defendant would have it, that the defendant have intended to deprive the vehicle *owner* of the vehicle or its value, based on the statute's introductory 'felonious taking' phraseology, would contravene the Legislature's evident intent to create, as the Court of Appeal recognized, 'a crime against the possessor or passengers in a vehicle,' not a crime against ownership. Contrary to our reasoning about the robbery statute in *Tufunga*, the Legislature in referring to carjacking as a 'felonious taking' apparently did *not* intend that phrase to carry the same meaning it had at common law.

"This conclusion is consistent with the historic fact that the carjacking statute, enacted in 1993 (Stats. 1993, ch. 611, § 6, p. 3508), responds to a relatively modern, urban problem, whereas the robbery statute (Pen. Code, § 211) was enacted in the mid-19th century. (See *Tufunga, supra*, 21 Cal.4th at

p. 946.) That the statutes are of such disparate origin further supports the conclusion that in the carjacking statute, unlike the robbery statute in *Tufunga*, the Legislature did not intend simply to incorporate the narrow common law understanding of 'felonious taking.' " (*People v. Montoya, supra,* 33 Cal.4th at p. 1038 (conc. opn. of Werdegar, J.).)

In addition to Justice Werdegar's views, we also note that under the express terms of the statute carjacking can be committed when the perpetrator intends to temporarily deprive the victim of possession. (§ 215, subd. (a).) The fact that carjacking does not require proof of an intent to permanently deprive the victim of a motor vehicle buttresses Justice Werdegar's conclusion that carjacking is strictly a crime against possession rather than ownership. As such it is not subject to a claim of right defense.

Because a claim of right will not operate as a defense to a crime against possession, the trial court did not err in preventing appellant from offering such a defense to the carjacking allegation.

## III

Evidence Code section 1109, subdivision (a)(1), provides in pertinent part: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." As we have indicated, in support of its case the prosecution offered testimony from two of appellant's former girlfriends. They each testified to incidents of domestic violence committed by appellant.

Appellant argues Evidence Code section 1109 violates due process because it unfairly allows a jury to consider evidence of a defendant's propensity to commit crime. In *People v. Falsetta* (1999) 21 Cal.4th 903, 917 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*), the court rejected a similar attack on analogous provisions of Evidence Code section 1108, subdivision (a), which permit evidence of prior sex offenses to be admitted when a defendant is charged with a sexual offense.[2] The court stated: "In summary, we think the trial court's discretion to exclude propensity evidence under [Evidence Code] section 352 saves section 1108 from defendant's due process challenge. As stated in [*People v.*] *Fitch* [(1997) 55 Cal.App.4th 172 [63

---

[2] Evidence Code section 1108, subdivision (a), states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Cal.Rptr.2d 753]], '[S]ection 1108 has a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial. Such evidence is still subject to exclusion under . . . section 352. [Citation.] By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. [Citation.] This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.] *With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that . . . section 1108 does not violate the due process clause.'* (*Fitch, supra*, 55 Cal.App.4th at p. 183, italics added.)" (*Falsetta, supra*, 21 Cal.4th at p. 917.)

■ As the respondent points out, following *Falsetta*, the Courts of Appeal have consistently upheld the constitutionality of Evidence Code section 1108. As the court in *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095–1096 [98 Cal.Rptr.2d 696], stated: "Admission of evidence of prior acts of domestic violence under [Evidence Code] section 1109 is similarly subject to the limitations of section 352. (§ 1109, subd. (a).) Under the reasoning of *Falsetta*, this safeguard should ensure that section 1109 does not violate the due process clause. (See *Falsetta, supra*, 21 Cal.4th at p. 917.) Since *Falsetta* was decided, several cases from the California Courts of Appeal have applied its reasoning to reject claims that admission of prior acts of domestic violence pursuant to section 1109 violates due process. (*People v. James* (2000) 81 Cal.App.4th 1343, 1353 [96 Cal.Rptr.2d 823] . . . ; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1335 [92 Cal.Rptr.2d 433] [same]; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027–1028 [92 Cal.Rptr.2d 208] [same]; *People v. Johnson* (2000) 77 Cal.App.4th 410, 417–420 [91 Cal.Rptr.2d 596] [same].) We agree with the rule of these recent cases and, accordingly, reject appellant's due process claim."

Like the other courts which have considered the issue, we too reject appellant's due process argument. As the court in *Falsetta* held, admission of propensity evidence is not unfair so long as the trial court is required to balance the probative value of the evidence against its prejudicial impact under Evidence Code section 352.

IV

The trial court did not abuse its discretion in admitting testimony from appellant's two girlfriends.

Matilda E. had a romantic relationship with appellant from 1991 through 1997. Matilda testified to three incidents of domestic violence. The first occurred on April 28, 1995. Appellant was angry because Matilda went to a fast food restaurant. According to Matilda, appellant punched her in the face and hit her on the arm; appellant then trapped Matilda in her bathroom until her sister was able to intercede. Matilda reported this incident to police.

The second incident occurred in May 1997. Matilda confronted appellant about perfume she smelled on him and appellant responded by hitting her on the lip, cutting it and causing it to swell.

The final incident occurred in October 1997. Matilda again confronted appellant with suspicions that he was seeing another woman; appellant initially left Matilda's home, but returned the next day, grabbed her by the arms and punched her in the leg, causing bruising. Appellant also threatened to beat Matilda if she left him.

Annalisa J. had a romantic relationship with appellant from October 1999 until 2002. Annalisa testified appellant assaulted her on two occasions. The first assault occurred in May 2001. Appellant was angry with Annalisa because she was drinking and was outside her home. Appellant followed Annalisa into her bedroom where he hit and bit her. Appellant then made her take off her shorts and underwear so she could not leave the room. After this first incident, he wrote Annalisa letters professing his love for her and his desire to start a family with her.

The second assault occurred after Annalisa started dating appellant again and became pregnant. Appellant moved to San Diego and Annalisa came to visit him at his uncle's house. Appellant accused her of seeing other people and threw her on a couch, got on top of her, hit her, pulled her hair and raped her. This incident left Annalisa with bruises on her ribs. Annalisa saw appellant on one more occasion, but appellant stopped calling Annalisa after she gave birth to their son.

In addition to the assaults, Annalisa testified that when she quarreled with appellant he would put her in his car and take her places where she did not want to go. Once he took her from Fresno to Santa Cruz; on another occasion while driving her against her will he threatened to take her to Mexico, kill her and get away with it.

Matilda's and Annalisa's testimony was highly probative. As the court in *People v. Hoover, supra,* 77 Cal.App.4th at pages 1027–1028 [92 Cal.Rptr.2d 208], noted in enacting Evidence Code section 1109, the Legislature found that in domestic violence cases evidence of prior acts is particularly probative in demonstrating the propensity of the defendant. " 'The

propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked.' " (*Ibid.*, quoting Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1876 (1995–1996 Reg. Sess.) June 25, 1996, pp. 3–4.)

▇▇ Here, the probative value of Matilda's and Annalisa's testimony is principally in its cumulative nature. Taken together, Matilda's and Annalisa's testimony sets forth a continuous and fairly unbroken pattern of domestic abuse which commenced in 1995 and continued until 2002. The testimony of Claudia demonstrated the pattern commenced again when appellant began dating her. Thus the testimony of Matilda and Annalisa was highly relevant and probative because it created a strong inference that appellant had a propensity to commit the acts Claudia described.

As respondent notes, Matilda's and Annalisa's testimony was not unnecessarily time consuming and only took up a total of 97 pages of the reporter's transcript. Because of the unbroken nature of appellant's abuse, the fact that the first of the five incidents was almost 10 years old did not render it unduly remote. (See *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [68 Cal.Rptr.2d 269].) Moreover, we note the incidents related by Matilda and Annalisa were in no sense more aggravated or inflammatory than the charged offenses. (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1139 [83 Cal.Rptr.2d 320].)

In short, we must uphold the trial court's admission of the prior incidents of domestic violence because their probative value far outweighed any potential prejudice. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [27 Cal.Rptr.2d 646, 867 P.2d 757].)

V

Finally, respondent concedes the trial court erred in sentencing appellant to the upper term of four years on the corporal punishment conviction and the trial court in fact intended to sentence defendant to the middle term of three years.

Accordingly, on remand we order the sentence on appellant's corporal punishment conviction be reduced to three years and stayed under section 654. In all other respects, the judgment is affirmed.

McConnell, P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 10, 2007, S155128. Kennard, J., was of the opinion that the petition should be granted.