[No. A116295. First Dist., Div. Three. Jan. 22, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK B. WILLIAMS, Defendant and Appellant.

COUNSEL

L. Richard Bruacher, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kay and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POLLAK, J.**—Defendant Jack B. Williams was convicted by a jury of committing various assaults on a 71-year-old man. Over defendant's objection, the prosecution presented evidence that defendant had committed two previous attacks on older men. On appeal he challenges the constitutionality of Evidence Code section 1109, subdivision (a)(2),[1] which authorizes the admission of evidence of prior bad acts in this context. We reject that challenge and shall affirm defendant's conviction.

### BACKGROUND

At trial there was substantial evidence of the following facts. The 71-year-old victim testified that on April 28, 2006, he was living in a hotel room in San Francisco. He awoke at approximately 8:30 p.m. and found defendant in his room, "absolutely nude." The victim had not invited defendant in and did not know he was there until he awoke. Defendant approached the victim and said he wanted to have sex with him. The victim said, "I backed away toward my bed and he draped himself over me." At some point, defendant "started licking [the victim's] shoulder." Defendant put his hand over the victim's mouth and the victim bit it. The victim threw a "piece from a brass bed" at defendant, but believed that it missed. The victim testified that during the encounter defendant "seemed to be wiping his genital with olive oil," and left a bottle of olive oil in the room.

The next morning the victim was leaving his room when defendant "rushed his way in." He pushed the victim to the floor. Defendant was not wearing any clothing. Defendant again covered the victim's mouth so he could not yell. The victim reported both assaults to the hotel manager.

The manager of the hotel testified that defendant also lived at the hotel at the time of the attack. On April 28 around 9:00 p.m., the victim came to the manager's door and "he was kind of pounding on my door. . . . And he said there was somebody in his room and trying to do something. [¶] . . . [¶] . . . [H]e was just trying to get rid of him because he was on top of him. He was just wrestling with him. [¶] . . . [¶] [The victim] was pretty well shaken up. He was really shaken up. He was kind of in hysterics." When the manager followed the victim to his room, he saw the back of a man walking down the hall away from the victim's room and saw that there was blood on the victim's sheets. The manager suggested calling the police but the victim "said he was really kind of too scared to do anything about it." The next morning, the victim came to the manager's door and said that the same person "was

---

[1] Further statutory references are to the Evidence Code.

trying to get in again." The manager left his room and again saw the back of a man running away. The manager ran down the stairs and "turned on the light . . . and I observed [defendant] down there." Defendant was wearing only a towel.

W.M., who was 91 years of age at the time of the trial, testified that he had known defendant for 35 to 40 years. In December 2003, defendant was at W.M.'s house and took some methamphetamine. They argued about defendant's use of the drugs and then W.M. went to bed while defendant was still at the house. Defendant "came into my bedroom and pinned my arms. I was asleep and he pinned my arms on his legs and beat the hell out of me." W.M. was bruised on his face and body. He reported the incident to the police and obtained a restraining order against defendant. Nevertheless, defendant returned to W.M.'s house and attempted to enter. On March 13, 2004, defendant returned to W.M.'s house and "beat me up in my chair in my living room." W.M. admitted that he cared about defendant and "just wish[ed] the best for him," but believed that his problems stemmed from the use of methamphetamine.

W.W., who was 76 years of age at the time of trial, testified that he met defendant five or six years earlier in a friendly encounter. A "couple years later" defendant approached him on the street and indicated that he wanted to have sex with W.W. He accompanied W.W. to his home. They decided not to have sex and parted amicably. On July 11, 2004, defendant again came to W.W.'s house. They were planning to have dinner and W.W. was making a salad. Defendant "disappeared. And then when I was about ready with dinner, I called him and he had apparently gone into my bedroom which I couldn't see from where I was. And he came out naked and wanted me to take my clothes off. [¶] . . . [¶] He kept insisting, demanding that I take my clothes off." W.W. refused and told defendant that "we had decided a long time ago there was nothing for us together and it was not going to work out. We were not compatible and I had too much to do, you know, to go through that again. And he insisted. And I said, 'Look, if you don't leave, I will have to call the police.' He said, 'No, you don't.' " Defendant returned to the bedroom and W.W. "thought he decided to get his clothes on and be reasonable." However, a few minutes later defendant came back and was still naked. Defendant was holding something which W.W. could not clearly see, but which he believed to be a knife. Defendant told W.W., " 'You take your clothes off or I will jab with this and it is HIV contaminated.' [¶] . . . [¶] He was very emphatic about it." W.W. was scared and "pretended that I was going to go along with it. And I went by him then towards the bedroom. But, instead of going into the bedroom I went out the door and next door and called the police." W.W. obtained a restraining order against defendant.

Defendant was charged by information with two counts of burglary (Pen. Code, § 459); a crime against an elderly person (Pen. Code, § 667.9, subd. (a)); two counts of inflicting injury likely to cause great bodily injury on an elder adult (Pen. Code, § 368, subd. (b)(1)); two counts of assault with intent to commit oral copulation and sodomy (Pen. Code, § 220); and two counts of false imprisonment (Pen. Code, § 236). Defendant pled not guilty to all charges. During trial, the district attorney amended the information to add "by force, fear or threats" to the burglary and assault with intent counts.

The jury found defendant not guilty of the charged offenses, but guilty of the lesser offenses of misdemeanor trespass against an elder person (Pen. Code, § 602.5, subd. (b)), misdemeanor elder abuse (Pen. Code, § 368, subd. (c)), misdemeanor assault (Pen. Code, § 240), and misdemeanor false imprisonment (Pen. Code, § 236).

Defendant was sentenced to one year in county jail on one count of false imprisonment and a consecutive one year on one count of misdemeanor trespass against an elder person. The court imposed but stayed a sentence of one year on the other count of misdemeanor trespass, six months for misdemeanor elder abuse, and six months for the other count of false imprisonment. Defendant was given custody credit for 186 days. Defendant timely appealed.

### DISCUSSION

On appeal, defendant argues only that the admission of the evidence concerning the earlier attacks on W.M. and W.W. was in error. Although the admission of such evidence of prior acts of elder abuse is expressly sanctioned by section 1109, subdivision (a)(2), defendant argues that the admission of this evidence violated his right to due process because it permitted the jury to find guilt based on propensity rather than on evidence of the crimes with which he was charged.

■ "As a general rule, evidence that is otherwise admissible may be introduced to prove a person's character or character trait. (§ 1100.) But, except for purposes of impeachment (see § 1101, subd. (c)), such evidence is inadmissible when offered by the opposing party to prove the defendant's conduct on a specified occasion (§ 1101, subd. (a)), unless it involves commission of a crime, civil wrong or other act and is relevant to prove some fact (e.g., motive, intent, plan, identity) other than a disposition to commit such an act (§ 1101, subd. (b))." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 [89 Cal.Rptr.2d 847, 986 P.2d 182], italics omitted (*Falsetta*).)

Section 1101, subdivision (a) provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion,

evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." With exceptions not relevant here, section 1109, subdivision (a)(2) provides a qualification to that general rule: "[I]n a criminal action in which the defendant is accused of an offense involving abuse of an elder or dependent person, evidence of the defendant's commission of other abuse of an elder or dependent person is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." This section was added in 2000. (Stats. 2000, ch. 97, § 1.)

■ To establish that section 1109, subdivision (a)(2) violates due process, "defendant must carry a heavy burden. The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity. [Citations.] In the due process context, defendant must show that section [1109] offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. [Citations.] ■ The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." (*Falsetta, supra,* 21 Cal.4th at pp. 912–913.)

In *Falsetta,* the Supreme Court addressed a due process challenge to section 1108, which analogously provides for the admission of evidence of prior sexual offenses where the defendant is charged with a sexual offense. In that case, the court agreed that exclusion of propensity evidence had long been the rule, but "a long-standing practice does not necessarily reflect a *fundamental,* unalterable principle embodied in the Constitution." (*Falsetta, supra,* 21 Cal.4th at p. 914.) The court considered "it unclear whether the rule against 'propensity' evidence *in sex offense cases* should be deemed a fundamental historical principle of justice." (*Ibid.*) The court determined that "in light of the substantial protections afforded to defendants in all cases to which section 1108 applies, we see no undue unfairness in its limited exception to the historical rule against propensity evidence." (*Falsetta, supra,* at p. 915.) The court reasoned that because the evidence admitted under section 1108 is limited to a defendant's other *sex* crimes it does not impose an undue burden on the defendant to defend against "far-ranging attacks on the defendant's character." (*Falsetta, supra,* at p. 916.) It also noted that the trial court retains discretion under section 352 to limit the evidence of uncharged crimes, observing that undue prejudice would be precluded by the appropriate exercise of the trial court's discretion to exclude unduly prejudicial evidence. "[T]he trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge." (*Falsetta, supra,* at p. 917.) Thus, the court "conclude[d], consistent with prior state and federal case law, that section 1108 is constitutionally valid." (*Falsetta, supra,* at p. 907.)

Although evidence of prior crimes against elderly persons has not been addressed by the appellate courts, section 1109, subdivision (a)(1), which permits the admission of evidence of prior acts of domestic violence, was recently upheld. In *People v. Cabrera* (2007) 152 Cal.App.4th 695 [61 Cal.Rptr.3d 373], the court rejected the argument that admission of evidence of two prior incidents of domestic violence against two other victims violated due process. The court applied the reasoning of *Falsetta* that " 'the trial court's discretion to exclude propensity evidence under . . . section 352 saves section [1109] from defendant's due process challenge.' " (*People v. Cabrera, supra*, at p. 703.)

■ Defendant argues that section 1109, subdivision (a)(2) is overly broad because it defines "abuse of an elder" in an "all-encompassing" manner, as " 'physical or sexual abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment that results in physical harm, pain, or mental suffering, the deprivation of care by a caregiver, or other deprivation by a custodian or provider of goods or services that are necessary to avoid physical harm or mental suffering.' (§ 1109, subd. (d)(1).)" However, the procedural safeguards present in section 1108 are likewise present in section 1109. The evidence of uncharged acts admissible under subdivision (a)(2) are limited to those taken against elderly persons, and the trial court has the same discretion under section 352 to exclude evidence that is unduly prejudicial or time consuming, or likely to confuse or mislead the jury.

■ The acts testified to by W.M. and W.W. were both physical assaults with a sexual tone committed on elderly men. They were very similar to the crimes charged in this case and tended to show a propensity to commit such acts. (See, e.g., *Falsetta, supra*, 21 Cal.4th at p. 915 ["Although defendant disputes the point, the case law clearly shows that evidence that he committed other sex offenses is at least circumstantially *relevant* to the issue of his disposition or propensity to commit these offenses. . . . 'Such evidence "is [deemed] objectionable, not because it has no appreciable probative value, *but because it has too much.*" ' "]; *People v. Karis* (1988) 46 Cal.3d 612, 636 [250 Cal.Rptr. 659, 758 P.2d 1189] [evidence of uncharged crimes is relevant "to show that the defendant had a propensity to commit a crime, a propensity that is circumstantial evidence that he committed the charged offense"].) They were no more inflammatory than the very acts with which defendant was charged. The court did not abuse its discretion in finding that this evidence was not unduly prejudicial. Its admission did not violate defendant's right to due process.

As there was no error in the admission of the prior acts, we do not reach defendant's further argument that the asserted error was not harmless beyond a reasonable doubt.

## Disposition

The judgment is affirmed.

McGuiness, P. J., and Siggins, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 2008, S161148.