Filed 12/8/15  P. v. Lewis CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURT APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067021 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS270932) |
| CHARLIE LEWIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Charlie Lewis of corporal injury to his spouse, Stephanie Lewis. Lewis admitted that he had one serious felony prior, one prison prior and one strike prior. The trial court sentenced him to a total of seven years in prison—the middle term of three years, doubled as a result of the strike prior, with a one-year consecutive sentence for Lewis's prison prior. Lewis appeals, contending the trial court failed to perform a proper balancing analysis as required under Evidence Code section 352 and thus improperly allowing the prosecution to introduce evidence of two prior bad acts under Evidence Code section 1109. (Undesignated statutory references are to the Evidence Code.) He also asserts the trial court prejudicially abused its discretion in allowing the prosecution to introduce evidence of five prior bad acts under section 1109 as these incidents were highly prejudicial and unnecessarily cumulative. We reject his contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*The Incident*

In March 2014, Stephanie and Lewis were married and living together. One day when Stephanie's sister, Kenia, was visiting the couple's home, the couple got into an argument outside of the house. Kenia observed Stephanie kicking Lewis and then saw Lewis punch Stephanie twice in the face. Stephanie returned to the home crying and Lewis left.

Lewis returned later that afternoon with his sister, Latifah. After the couple started arguing again, Lewis first threatened Stephanie with closed fists and then punched her in the face and other parts of her body as she tried to block the punches. Latifah

2

separated the couple, but the couple resumed arguing in the bedroom a short time later. Lewis removed his belt and began hitting Stephanie with both the buckle and the leather end of the belt. Kenia got scared and called the police. The argument moved to the kitchen where Lewis grabbed a knife. After Lewis dropped the knife, Stephanie grabbed it and chased Lewis out of the house. When the police arrived, they saw that Stephanie's left ear was bleeding, she had cuts on her jaw and left leg, an abrasion on her left knee and some bruises.

*In Limine Motion Regarding Prior Acts of Domestic Violence*

Before trial, the court granted the prosecution's motion to introduce four prior incidents of domestic violence under section 1109. Two incidents in 2011 involved a former girlfriend that resulted in a misdemeanor battery conviction and a guilty plea for assault with a deadly weapon. The remaining two incidents occurred in 2013 and 2014 and involved Stephanie. During the first incident a store clerk observed Lewis drag Stephanie to the ground and kick her in the stomach. The second incident involved Lewis arguing with Stephanie in violation of a criminal protective order.

The day before trial, the People indicated that they wanted to introduce two additional incidents of domestic violence. The trial court excluded the 2014 incident involving violation of the criminal protective order, but granted the prosecution's request to present evidence of the two other uncharged incidents that occurred in 2013.

*The Trial*

At trial, the prosecutor read the parties' stipulation regarding the two 2011 incidents that involved Lewis's former girlfriend and resulted in a misdemeanor battery

3

conviction and a guilty plea for assault with a deadly weapon. As to the third incident, a store clerk testified that he observed Lewis pull Stephanie to the ground, yell at her and kick her twice in the stomach.

Kenia testified regarding two incidents of domestic violence that occurred before the charged events. On Thanksgiving in 2013, she saw Lewis put his hand on Stephanie's neck and push her against a wall. Lewis left after Kenia threatened to call the police. Sometime after that incident, Kenia saw the couple arguing in a parking lot. The couple started pushing each other and then Lewis began hitting Stephanie. Lewis left after neighbors threatened to call the police.

Regarding the charged crimes, Kenia testified that she saw Lewis assault Stephanie with his fist and a belt. During the incident, Kenia called 911 claiming that Lewis was beating up Stephanie and hitting her with a belt. Kenia, however, admitted lying to an investigator after the incident because Stephanie begged her to lie so Lewis would not be convicted.

## DISCUSSION

### I. *Propensity Evidence*

A. Legal Principles

Although evidence of prior criminal acts is generally inadmissible to show the defendant's propensity to commit the charged offense (§ 1101, subd. (a)), the Legislature has created an exception to this rule in cases of domestic violence for evidence of a defendant's commission of other acts of domestic violence (§ 1109, subd. (a)(1)). "[T]he statute reflects the legislative judgment that in domestic violence cases, as in sex crimes,

4

similar prior offenses are 'uniquely probative' of guilt in a later accusation. [Citation.] Indeed, proponents of the bill that became section 1109 argued for admissibility of such evidence because of the 'typically repetitive nature' of domestic violence. [Citation.] This pattern suggests a psychological dynamic not necessarily involved in other types of crimes." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532; fns. omitted.)

The statute establishes a presumptively admissible time frame and permits the introduction of acts occurring within 10 years of the charged offense; older offenses may also be admitted if the court finds their admission to be in the interest of justice. (§ 1109, subd. (e).) The statute also incorporates section 352, making evidence of past domestic violence inadmissible only if the court determines that "its probative value is 'substantially outweighed' by its prejudicial impact. We review a challenge to a trial court's decision to admit such evidence for abuse of discretion." (*People v. Johnson*, *supra*, 185 Cal.App.4th at p. 531, fn. omitted.)

B. Analysis

Lewis contends the trial court performed an improper balancing analysis before allowing evidence of the two 2013 events witnessed by Kenia, noting the trial court allowed the evidence without inquiring into the details of the incidents. The People assert Lewis waived the alleged defect because defense counsel failed to specifically object that the court did not perform a proper balancing analysis under section 352.

Generally, a party forfeits an appellate claim that evidence was erroneously admitted if the party did not object on that specific ground below. (§ 353, subd. (a).) The objection should inform the court and the parties the specific reasons for excluding the

5

evidence to allow the party offering the evidence to respond appropriately and for the court to make a fully informed ruling. (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1214.) Lewis forfeited any claim that the trial court lacked sufficient information to conduct a proper balancing inquiry by failing to object on this specific ground below. By failing to object on this ground, Lewis prevented the prosecution from correcting the defect by providing more information about the two uncharged incidents.

Even if the claim of error had been preserved for appeal, we would conclude that any error was harmless. " ' "The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense." ' " (*People v. Johnson*, *supra*, 185 Cal.App.4th at pp. 531-532.) Here, the trial court lacked any information about the 2013 incidents to allow it to determine the probative value of these uncharged acts. Nonetheless, "even erroneous admission of evidence does not offend due process unless it is so prejudicial as to render the proceeding fundamentally unfair." (*People v. Esayian* (2003) 112 Cal.App.4th 1031, 1042.)

One prior incident involved Lewis putting his hand on Stephanie's neck and pushing her against a wall. The other incident involved mutual pushing and Lewis hitting Stephanie. These prior incidents were less inflammatory than the charged incident where Lewis hit Stephanie with his fist and a belt, leaving her bloodied and bruised. Accordingly, had the court properly evaluated the evidence, the potential for prejudice did not outweigh the clear probative value of the evidence. (*People v. Johnson*, *supra*, 185 Cal.App.4th at p. 534, fn. 11 ["Courts are primarily concerned where the past bad act was 'more inflammatory' than the offense for which the defendant is on trial."].)

6

Finally, the strong evidence against Lewis made it highly unlikely that the jury convicted him of the instant crimes based on the two uncharged prior acts. Kenia testified that she saw Lewis assault Stephanie with his fist and a belt. While there is no question that Kenia placed her credibility at issue when she admitted previously lying to an investigator, her 911 call during the incident corroborated her trial testimony. Additionally, a responding police officer and paramedic testified about Stephanie's statements about Lewis's assault and observed the injuries on Stephanie's body. Accordingly, any error in admitting the two uncharged incidents was harmless under any standard.

Lewis also claims the trial court prejudicially abused its discretion in allowing the prosecution to introduce evidence of the five prior bad acts under section 1109 as these incidents were highly prejudicial and unnecessarily cumulative so as to violate his right to a fair trial. He claims that absent this evidence the prosecution would have been unable to show, beyond a reasonable doubt, that he had not acted in self-defense or that the incident had been one of mutual combat.

In making this argument, Lewis ignores that the probative value of prior domestic violence evidence is the "cumulative nature" of the evidence to show a pattern of domestic abuse. (*People v. Cabrera* (2007) 152 Cal.App.4th 695, 706.) The prior acts evidence did not take an undue amount of time, was not remote or more inflammatory than the charged conduct. The trial court acted well within its discretion under section 1109 when it ruled to admit all five acts of prior domestic violence.

Moreover, the trial court instructed the jury on the proper use of this evidence (CALCRIM No. 852), the presumption of innocence and that the prosecution was required to prove each element of the charged offenses beyond a reasonable doubt. (CALCRIM Nos. 103, 220.) These instructions virtually eliminated the risk of a conviction based on Lewis's conduct for the prior offenses. The court also fully instructed the jury on when a defendant may lawfully use force in self-defense (CALCRIM No. 3470), circumstances when self-defense is available to an aggressor or mutual combatant (CALCRIM No. 3471), and that a plea of self-defense may not be contrived (CALCRIM No. 3472). As the prosecutor noted during closing argument, it was for the jury to decide the credibility of the witnesses and Lewis's claim of self-defense. Accordingly, Lewis has failed to establish error in the admission of the prior uncharged acts evidence.

DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.

8