Filed 2/8/22  P. v. Scarborough CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN HOMER SCARBOROUGH,<br><br>    Defendant and Appellant. | D078425<br><br><br><br>(Super. Ct. No. SCD284704) |

APPEAL from a judgment of the Superior Court of San Diego County, Frederick L. Link, Judge.  Affirmed.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant John Homer Scarborough guilty of elder abuse (Pen. Code, § 368, subd. (b)(1)) and assault (Pen. Code, § 240).  Scarborough also admitted a strike prior (Pen. Code, § 667, subds. (b)-(i)).  The trial court sentenced Scarborough to six years in prison.

On appeal, Scarborough challenges the trial court's decision to admit evidence of his prior act of elder abuse as propensity evidence under Evidence Code section 1109, subdivision (a)(2).[1]  Scarborough contends the prior act was not sufficiently similar to the current offense to warrant admission as propensity evidence.  He further argues that even if the prior act were admissible, the trial court should not have allowed the prior victim to testify live, should not have allowed details of the prior incident, and should not have admitted photographs of the prior victim's injuries.  According to Scarborough, because the two incidents were not "particularly similar," such evidence was improperly inflammatory, and its prejudicial effect outweighed its probative value.  We conclude the trial court did not abuse its discretion in weighing the probative value of the evidence regarding the prior act against the risk of undue prejudice.  (§ 352.)  Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. The Instant Offense

Scarborough committed the instant offense of elder abuse against Robert S., who was 87 years old at the time of the incident.  As Robert was walking out of a grocery store, Scarborough approached him and hit him in the face with a flashlight.  The hit cut Robert's chin and caused him to lose his balance.  He fell backwards to the ground and dropped his groceries.  Robert testified he had not had any prior interaction with Scarborough before the incident.

A female customer, E.G., testified she noticed Scarborough walking throughout the store, holding the flashlight, and moving his head in big motions from side to side so that his chin was going from shoulder to

---

[1]     All further statutory references are to the Evidence Code unless otherwise indicated.

2

shoulder.  Scarborough also had an expression on his face that scared E.G. She was uncomfortable around Scarborough and avoided him in the store.

Later, E.G. heard loud, angry hollering.  She went to the front of the store and saw Robert laying on his back at the threshold of the store entrance.  Scarborough was holding the flashlight over his head, bending over Robert and screaming at him.  E.G. approached Scarborough and told him to leave Robert alone.  At that point, E.G. saw another customer, Everett G., come out to the front of the store, followed by the store manager.

Everett testified that when he first arrived at the grocery store, Scarborough caught his attention because of his demeanor and body movements, and because Scarborough was following Everett closely.  Everett entered the store, continuing to watch Scarborough through the reflection of a display.  As he was watching Scarborough through the reflection, Everett saw Scarborough hit Robert with the flashlight between Robert's lip and chin. When Everett turned around, he saw Scarborough standing over Robert with the flashlight in his hand, saying he was going to kill Robert if Robert threw something on him again.  While standing at the threshold of the door, Everett told Scarborough to "turn [Robert] loose," and Scarborough stepped back, at which time the store manager exited the store.

The store manager testified that when he arrived at the front door, he saw Robert on the ground with three employees helping him.  Just outside the front door, Scarborough was swinging a flashlight around, yelling at the top of his lungs, making threats, and trying to make his way back toward Robert.  Scarborough was yelling "he threw fleas on me," and other incoherent remarks.  The manager thought Scarborough was a transient person.

3

The manager immediately stepped in front of Scarborough, who kept trying to step toward Robert. Scarborough continued to raise his flashlight and swing it at the manager, but never actually hit him. Scarborough was also making threats such as "I'll hit you," and "I'll get you." The manager kept his hands in his pockets and talked to Scarborough calmly. Scarborough kept circling and trying to move toward the store. However, every time Scarborough took a step back, the manager moved forward until eventually Scarborough was "pretty far away" from the store and calmed down. Scarborough sat on a curb about 500 or 600 feet away from the store while they waited for the police. The entire interaction lasted about 30 minutes before police arrived.

### B. The People's Motion in Limine to Present Evidence of Prior Elder Abuse Under Section 1109, Subdivision (a)(2)

Relying on section 1109, subdivision (a)(2), the People moved in limine to present evidence of Scarborough's prior conviction of elder abuse. The People characterized both incidents as random, unprovoked, and unjustified attacks on elder male victims.

The People represented that the prior victim, David F., was selling hot dogs when Scarborough punched David in the face for reasons unknown to anyone. They were complete strangers. David fell to the ground and Scarborough continued to punch and kick him until a crowd pulled him away. David suffered a broken nose and abrasions to his face. The People argued this prior act was similar to the current charge and demonstrated Scarborough's propensity to randomly attack innocent, elderly victims.

Scarborough's counsel maintained the prior incident was dissimilar because Scarborough knew David from an altercation the day before when Scarborough was smoking in front of a church near David's hot dog stand, and David told Scarborough to leave. Scarborough argued that because of

4

this prior encounter, the attack on David was not random. He also asserted the case at hand was not random because Scarborough accused Robert of spitting or throwing something on him. Scarborough further argued the incidents were different because of what had prompted the attacks.

The court noted the incidents appeared similar as there was some contact and conflict between Scarborough and the victim before each attack. The People agreed, arguing that in both incidents, Scarborough believed he had an issue with the victims and there was some prior interaction that enraged him.

As for the severity of the attacks, Scarborough urged the details of David's injuries were inflammatory and his prior conduct was more egregious. According to Scarborough, the prior incident was extremely violent, noting he punched and kicked David on the ground causing multiple injuries. By contrast, Scarborough added, the current charge involved a minor act in which he confronted Robert, pushed him to the ground, and stood over him but did not continue to hit him. Additionally, Robert suffered only a minor scratch.

The People argued that while Scarborough did not continue to beat Robert while he was on the ground, Scarborough hovered over him, waving the flashlight around, yelling "I'm going to kill him." Because witnesses were able to separate Scarborough from Robert, Scarborough's attack was not necessarily over once Robert was on the ground.

The trial court found that Scarborough's prior act was sufficiently similar to the current charge to show a propensity to attack elders. The trial court ruled that the evidence would be allowed under section 1109, subdivision (a)(2).

5

## C. The Prior Victim's Testimony

During trial, the People called David to testify regarding Scarborough's prior act of elder abuse. David was 71 years old at the time of the incident and was operating a hot dog cart near a Department of Motor Vehicles office, about 10 feet away from a church. One morning, two men who David thought were transients, were sitting on the steps of the church "smoking, swearing, yelling, [and] doing all kinds of things."

David asked the men to move down the road because their actions and language would deter customers. After the men refused, David said he would call the police. Both men left at that point. As they were leaving, one man, who David identified as Scarborough, became hostile and yelled he was going to come back and "I'm going to kill you."

The next day, Scarborough came up behind David and hit him in the back and face with closed-fist punches. One of the punches knocked David to the ground and Scarborough continued to "pound on" him. Scarborough's attack stopped once a woman started screaming and bystanders got involved. The bystanders also called the police, who came within a few minutes.

The People showed three photographs of David's injuries. David described his injuries as "cuts" on his forehead, his nose, and the side of his face. He also testified that his nose was broken, and his right eye was swollen.

The transcript of David's testimony is 11 pages and his testimony lasted approximately 15 minutes.

## DISCUSSION

Scarborough argues his prior act of elder abuse was not sufficiently similar to the instant offense in order to qualify for admission as propensity evidence under section 1109, subdivision (a)(2). Additionally, he argues that

6

even if it was proper to admit the fact of his prior act, the prejudice of allowing David to testify live and admitting photographs of his injuries, outweighed the probative value under section 352.

## A. Legal Principles

Evidence of a person's character or predisposition to act in a certain way is generally inadmissible to prove conduct in conformance with that character trait on a given occasion. (§ 1101, subd. (a); *People v. Villatoro* (2012) 54 Cal.4th 1152, 1159.) However, section 1109 creates an exception to this general rule, providing that "in a criminal action in which the defendant is accused of an offense involving abuse of an elder . . . , evidence of the defendant's commission of other abuse of an elder . . . is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." The statute defines elder abuse as "physical . . . abuse . . . or other treatment that results in physical harm, pain, or mental suffering." (§ 1109, subd. (d)(1); see Pen. Code, § 368, subd. (g) [defining elder as a person who is 65 years of age or older].) So long as the prior act satisfies this statutory definition and occurred no more than 10 years before the charged offense, it "is presumptively admissible." (*People v. Thomas* (2021) 63 Cal.App.5th 612, 628 (*Thomas*); § 1109, subd. (e) ["Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice."]; see *People v. Williams* (2008) 159 Cal.App.4th 141, 145 (*Williams*).)

By section 1109's incorporation of section 352, evidence of a prior act of elder abuse is admissible *unless* "its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ." (§ 352.) " 'The principal factor affecting the

7

probative value of an uncharged act is its similarity to the charged offense. Other factors affecting the probative value include the extent to which the source of the evidence is independent of the charged offense, and the amount of time between the uncharged acts and the charged offense. The factors affecting the prejudicial effect of uncharged acts include whether the uncharged acts resulted in criminal convictions and whether the evidence of uncharged acts is stronger or more inflammatory than the evidence of the charged offenses.' " (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274 [analyzing the admissibility of prior sex offenses under analogous § 1108]; *Williams*, *supra*, 159 Cal.App.4th at p. 147 [analogizing § 1108 to § 1109, subd. (a)(2)].)

We review a challenge to a trial court's decision to admit evidence for abuse of discretion. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531 (*Johnson*).) "A trial court's exercise of its discretion under section 352 must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1337, internal quotations omitted.)

B. Analysis

Scarborough's prior act of physically abusing then 71-year-old David in 2014 satisfies the statutory definition of elder abuse; thus, it was presumptively admissible, subject to exclusion only under section 352.[2]

---

[2] Scarborough argues the prior act was not sufficiently similar to the current offense to "qualify" for admission under section 1109, subdivision (a)(2). However, there is no strict similarity requirement for the admission of a prior act of elder abuse. (See *People v. Loy* (2011) 52 Cal.4th 46, 63; *People v. Robertson* (2012) 208 Cal.App.4th 965, 991.) Rather, the similarity to the charged offense is a factor affecting the probative value of the prior act, when

(*Thomas*, *supra*, 63 Cal.App.5th at p. 628; § 1109, subd. (a)(2).)  We find no abuse of discretion in the trial court's determination that the probative value of the prior act was not substantially outweighed by a substantial risk of undue prejudice.  (§ 352.)

The prior act was highly probative because it bore many similarities to the current offense.  Scarborough's relationships to the victims in each attack were similar.  In both incidents, Scarborough attacked unsuspecting elderly men who did nothing wrong, and who did not know Scarborough personally.  Additionally, Scarborough believed that both David and Robert disrespected him.  He did not like that David told him to move from the church steps, and he believed that Robert threw something on him.  Further, while Scarborough characterizes his interaction with David as "significant," and his interaction with Robert as "brief" or "minor," in both instances, Scarborough attacked in response to a perceived issue or disagreement.

The severity of the attacks were also similar.  Scarborough yelled at both David and Robert some variation of threats, including "I'm going to kill you."  Although Scarborough did not continue to hit Robert while he was on the ground, three witnesses testified they saw Scarborough leaning over Robert or trying to make his way back to Robert, yelling, and waving his flashlight at him.  Further, all three witnesses testified they either stepped in between Scarborough and Robert, or told Scarborough to leave Robert alone.  Thus, even though Scarborough did not continue to physically hit or kick Robert while he was on the ground, Scarborough's threatening behavior continued after Robert fell.

---

conducting the weighing process under section 352.  (*People v. Lewis* (2009) 46 Cal.4th 1255, 1285.)

We disagree with Scarborough's contention that his prior act was dissimilar to the current offense because the prior incident was not "random" and was more severe. Scarborough's prior act was sufficiently similar to the charge in this case such that it was highly probative to show his propensity to attack elders.

We are not persuaded that this probative value was substantially outweighed by the risk of undue prejudice. Evidence is not unduly prejudicial merely because highly probative evidence is damaging to the defense case. (*People v. Doolin* (2009) 45 Cal.4th 390, 439 (*Doolin*).) Rather, the "prejudice" contemplated in section 352 refers to evidence that "uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138.) "In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction." (*Doolin*, at p. 439.) Such evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an improper purpose. (*Ibid.*) A trial court must consider less prejudicial alternatives such as excluding irrelevant, inflammatory details of the prior act. (*People v. Disa* (2016) 1 Cal.App.5th 654, 672-673 (*Disa*).)

Scarborough argues he was prejudiced because David's testimony and the photographs of David's injuries created the impression that he was a "violent, dangerous man with a tendency to assault senior citizens." However, this is the point of section 1109 evidence—it allows the jury to draw propensity inferences from the prior act. (*Johnson, supra,* 185 Cal.App.4th at p. 529.) Section 352 is focused on preventing *undue* prejudice, not any

10

prejudice at all by unfavorable evidence. (*Doolin*, *supra*, 45 Cal.4th at pp. 438-439.) Evidence is not prejudicial under section 352 merely because it shores up the proponent's case. The ability to do so is what makes the evidence relevant. (*Id.* at p. 438.)

Scarborough contends the trial court could have admitted only the fact of the prior act or some sanitized version of it. But he never asked the trial court to do so, and has thus forfeited the issue on appeal. (*People v. Clark* (2016) 63 Cal.4th 522, 561.) Even if he had not forfeited the issue, it would fail on the merits.

Scarborough relies on *Disa*, where the Court of Appeal held it was error to admit the inflammatory details of a prior domestic abuse, even if the fact of the prior offense was properly admitted. Scarborough's reliance on *Disa* is misplaced. There, the details that should have been excluded were inflammatory because they touched on a key issue in the case other than the defendant's propensity to commit violence against a partner or former partner.

In *Disa*, the defendant was charged with murder and a jury ultimately found him guilty of first-degree premeditated murder. (*Disa*, *supra*, 1 Cal.App.5th at pp. 657-658.) Prior to trial, the defendant admitted that he killed his girlfriend by putting her in a chokehold but denied that he meant to kill her. (*Id.* at p. 657.) Thus, the defendant's intent and the circumstances under which he killed his girlfriend were at issue at trial. (*Id.* at p. 669.)

The trial court found that, in light of the defendant's claim that the killing was an accident or arose from an argument, his prior domestic violence was admissible to show his propensity to commit violence upon a partner or former partner under section 1109. (*Disa*, *supra*, 1 Cal.App.5th at

11

p. 669.) But in its section 352 analysis, the trial court ruled details related to premeditation and deliberation were not admissible. (*Id.* at pp. 669-670, 673.) Nonetheless, an officer testified that in the prior incident, the defendant waited for over 12 hours in his former girlfriend's apartment, including more than six hours hiding in a closet, then attacked her and her new partner in the middle of the night. (*Id.* at p. 670.)

The Court of Appeal concluded this evidence was highly inflammatory and was not relevant to the purpose for which the past domestic violence was admissible, that is, to show a propensity to commit violence to a partner or former partner. (*Disa, supra,* 1 Cal.App.5th at p. 674.) "Given the serious risk the jury would improperly use the specific facts of defendant's past conduct to find premeditation and deliberation in the current matter, it was incumbent upon the trial court to exclude evidence of defendant's extensive planning and waiting in the prior incident." (*Id.* at p. 673.)

Here, unlike in *Disa*, the details of Scarborough's prior attack on David were not, and could not have been, used for any reason other than the proper purpose of showing Scarborough's propensity to commit violence against elders. Therefore, the analysis in *Disa* is inapplicable to this case.

Scarborough also argues that David's testimony and photographs of David's injuries generally biased the jury against him. He takes specific issue with David's testimony describing him in "negative detail" and stating that he and another man were "smoking, swearing, yelling . . . pretty much, you knew they were loaded." Scarborough also raises concern with David testifying that Scarborough threatened to kill David. Scarborough, however, also threatened to kill Robert. Further, multiple witnesses testified that on the day of Scarborough's attack on Robert, Scarborough's demeanor, facial expressions, and body movements caught their attention, or made them

scared and uncomfortable. David and the store manager also both testified that their impression was that Scarborough was a transient person. David's testimony did not paint Scarborough any more negatively than the testimony regarding Scarborough on the day he attacked Robert.

The details of Scarborough's attack on David were also no more inflammatory than the evidence regarding Scarborough's current offense. As discussed above, although Scarborough hit David multiple times, his attack on Robert was not necessarily less egregious where he continued to yell and wave a flashlight at Robert, while witnesses stepped in between them or told him to leave Robert alone. E.G. even became emotional on the stand while describing Robert on the ground with blood on his face. Additionally, the photographs of David's injuries are not inflammatory but rather show that when compared to photographs of Robert's injuries, the attacks were more similar than not. In the photographs, both David and Robert have a visible cut on their face. While David's cut is slightly larger than Robert's, both appear to be surface wounds. Further, David's testimony that his nose was broken and his right eye was swollen are subdued by the photographs. In two photographs from the day of the incident, David's nose and right cheek area are red but do not appear bloody. The third photograph shows a slightly bruised and swollen eye. In all three photographs, David's broken nose is barely discernible.

In sum, the evidence regarding Scarborough's prior act, including David's live testimony, the details of the prior incident, and the photographs of David's injuries, were not the sort to evoke an emotional bias against Scarborough and were therefore not unduly prejudicial.

For the foregoing reasons, the trial court did not abuse its discretion in admitting the evidence of Scarborough's prior act of elder abuse.

13

## DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.