Filed 5/22/23  P. v. Ames CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>JOSEPH AMES,<br><br>    Defendant and Appellant. | A163976<br><br>(Alameda County<br>Super. Ct. Nos. 18-CR-004211 &<br>18-CR-014072) |

Defendant was convicted of two felony counts of corporal injury to his spouse that occurred in July 2017 and in February 2018.  On appeal, he challenges the admission of evidence at trial under Evidence Code section 1109 and the exclusion of other evidence.[1]  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The People charged defendant by amended information with three counts of corporal injury to his spouse Jane Doe (Doe).  (Pen. Code, § 273.5, subd. (a).)  Counts 1 and 2 were felony counts occurring on or about July 26, 2017 and February 3, 2018, respectively, while count 3 was a misdemeanor count occurring on or about July 31, 2018.

---

[1]    All further statutory references are to the Evidence Code unless otherwise indicated.

Prior to jury selection, the People moved to introduce the following evidence of prior acts of domestic violence pursuant to section 1109: prior to 2015, Doe and defendant would only get into verbal arguments; after Doe asked defendant to move out in July 2015, defendant slammed Doe's head into a wall a number of times and put holes into the walls out of anger; in 2017, defendant physically held Doe down or pushed her against things, threw objects (like a television), and taunted Doe to call 911 with a lamp in his hand; and on October 2, 2018, while driving home from San Francisco, defendant slammed Doe's head into the passenger side window causing bruising. Over defendant's objection, the trial court ruled the evidence would be admissible.

Trial proceeded. The following is a summary of the trial evidence.

## A. The prosecution case

The prosecution's principal witness was Doe, who gave the following testimony.

Doe and defendant married in 2011 and had a son in 2012. The early portion of their marriage was normal and "fine." But by July 2015, defendant's verbal abuse by name calling had gotten worse, and Doe requested a separation. Doe allowed defendant to move back home two months later because she felt he was deteriorating mentally and he threatened to take their child away. When he returned, defendant continued his verbal abuse and also became physical with Doe, holding her down, grabbing her arms, and pushing her head against walls. At the time, Doe weighed about 135 pounds and was roughly five feet and four inches tall, while defendant weighed around 280 pounds and was six feet and four inches tall. Defendant caused no visible injury during this time period.

2

Toward the end of 2015, Doe began having seizures and her relationship with defendant stabilized for much of 2016. But by early 2017, the two were arguing. Defendant threw things and punched holes in the walls, and he broke their son's toys. He also pushed Doe's head into walls again or grabbed her, but not in a way that caused visible injury.

Doe then testified about the three charged crimes occurring in July 2017, February 2018, and July 2018.

On July 25, 2017, defendant became angry when Doe woke him up after she returned home from a work dinner. He yelled, destroyed things, and eventually grabbed Doe and slammed her against the wall, causing her head to hit the wall about three times. Defendant used more force than ever before. He also slammed Doe against the edge of a table, pinned her to the ground, and pushed his forearm into her throat. Doe went to the hospital but did not call the police. On July 31, she returned to the hospital because she was urinating blood, and she also tried to report the incident at the police station but left without doing so.

On February 3, 2018, Doe said something to defendant about him having an affair. Defendant responded by grabbing her and slamming her against the nightstand. Doe talked to a police officer at the hospital but lied about who caused her injuries. On February 28, 2018, Doe reported the July 25, 2017 and February 3, 2018 incidents, and the police arrested defendant. After defendant was released, he and Doe continued to live together on and off.

On July 31, 2018, defendant went to Doe's home angry after a court date. He grabbed Doe hard by her sports bra, causing an injury like a rug burn to her skin. He then destroyed things in the house. Doe did not call the police that day. The relationship continued on and off thereafter.

3

Doe also testified that on October 2, 2018, she and defendant argued on a drive home from San Francisco, and defendant slammed her head into the passenger side window. On the way to his mother's house, defendant refused to stop to let Doe use the bathroom, so she urinated on herself. Doe called 911, and the police arrested defendant that day. After this incident, the two finally stopped speaking and seeing each other.

Doctors who treated Doe in July 2017 and February 2018 testified. Doe's medical records were admitted into evidence. Photographs of the alleged injuries and damage to the house, and text messages between Doe and defendant were shown to the jury. Doe's mother testified, among other things, that she told Doe to photograph her injuries the night of July 25, 2017, and that she picked Doe up from the hospital days later.

## B. The defense case

Defendant testified on his own behalf. He denied ever physically assaulting Doe and claimed he merely acted to evade her aggressive behavior. He also claimed Doe had seizures that caused her to fall a lot. Defendant did, however, acknowledge breaking and throwing things around the house, punching holes in walls, and loudly arguing with Doe.

The defense case included the testimony of defendant's son. The son had observed his parents fighting and yelling and his father breaking his toys. He also saw holes in the walls and other broken objects. But he never saw his parents hurt each other. Once, Doe started an argument with defendant by accusing him of cheating on her. On two occasions, the son hid in the bathroom with Doe, who looked scared, while his father was outside the bathroom breaking things and saying "bad words."

4

The jury was unable to reach a verdict as to the misdemeanor count concerning the alleged incident in July 2018, but found defendant guilty of the felony counts concerning the incidents in July 2017 and February 2018.

## DISCUSSION

### A. Section 1109

Defendant argues the trial court erred in granting the prosecution's motion to admit evidence of his alleged but uncharged acts of domestic violence under section 1109. As we will explain, we find no error.

#### 1. General Principles

Character evidence is generally inadmissible to prove conduct on a specific occasion (§ 1101, subd. (a)), but there is an exception in cases of domestic violence. Section 1109 provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a)(1).) For purposes of this section, "domestic violence" includes abuse committed against a spouse or former spouse. (§ 1109, subd. (d)(3); see Pen. Code, § 13700, subd. (b); Fam. Code, § 6211, subd. (a).) "Abuse" means "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (Pen. Code, § 13700, subd. (a); § 1109, subd. (d)(3).) However, *if the other act occurred no more than five years before the charged offense, then "abuse" more broadly encompasses a number of behaviors* such as molesting, attacking, striking, stalking, threatening, harassing, destroying personal property, and disturbing the peace of the other party. (Fam. Code, §§ 6203, subd. (a)(4), 6320; § 1109, subd. (d)(3).)

5

"Even if the evidence is admissible under section 1109, the trial court must still determine, pursuant to section 352, whether the probative value of the evidence is substantially outweighed by the probability the evidence will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury." (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1233.) "In conducting the careful weighing process to determine whether propensity evidence is admissible under section 352, trial courts 'must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission . . . .' " (*People v. Kerley* (2018) 23 Cal.App.5th 513, 535 (*Kerley*).) We review the decision to admit evidence of uncharged acts for abuse of discretion. (*People v. Mani* (2022) 74 Cal.App.5th 343, 358 (*Mani*).)

### 2. Analysis

#### (a) Conduct constituting "domestic violence" and "abuse"

Defendant first contends the trial court erred in admitting the evidence because "it is unclear whether the conduct Doe described in her testimony met the definition of 'domestic violence' in order to be admissible under . . . section 1109." In particular, defendant claims Doe's testimony concerning his verbal abuse and other acts that did not result in physical injury—e.g, when defendant grabbed Doe's arms and pushed her head against things—did not clearly meet the definition of domestic violence.

Defendant, however, never made this argument below. Though defendant claims an objection on this ground would have been futile given

"the trial court's previous rulings," he presents no developed argument with citation to the record in support of that claim. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.) Review of this issue has been forfeited. (§ 353, subd. (a).)

Even if not forfeited, the contention lacks merit. When considering whether to admit evidence of an uncharged act, "[t]he trial court must make a preliminary determination of whether the proffered evidence is sufficient for the jury to find, by a preponderance of the evidence, that the defendant committed an enumerated offense." (*People v. Jandres* (2014) 226 Cal.App.4th 340, 353.) We review the determination of this preliminary fact for an abuse of discretion. (*Ibid.*) " 'The court should exclude the proffered evidence only if the "showing of preliminary facts is too weak to support a favorable determination by the jury." ' " (*Ibid.*)

Here, nearly all of the uncharged acts occurred within five years of the charged July 26, 2017 offense, thus triggering application of the broader meaning of "domestic violence" and "abuse" as set forth in Family Code sections 6203, subdivision (a)(4), and Evidence Code section 1109, subdivision (d)(3). The trial court could reasonably conclude the evidence of defendant's verbal abuse of Doe in the five years preceding the July 2017 offense was sufficient for the jury to find by a preponderance of the evidence that such behavior was molesting, or harassing, or disturbed Doe's peace, and thereby constituted abuse and domestic violence for purposes of the Family and Evidence Codes. (*Mani, supra,* 74 Cal.App.5th at p. 360.) Similarly, the evidence of defendant's acts of pushing Doe's head against things, holding her down, taunting her with a lamp, and punching holes in the walls and throwing objects in her presence likewise was sufficient for the jury to

7

conclude by a preponderance of the evidence that such acts constituted abuse and domestic violence.

The uncharged conduct that occurred more than five years before the charged offense consisted of Doe's testimony that defendant began calling her names during the last two months of her pregnancy (she gave birth in April 2012). Because this early period of name calling preceded the first charged July 25, 2017 offense by a little more than five years, the narrower definition of "domestic violence" and "abuse" in Penal Code section 13700 would apply to it. (§ 1109, subd. (d)(3).) Though the evidence of name calling does not appear to fit within this narrower definition, any assumed error in its admission was not prejudicial under any standard. Specifically, the trial court properly admitted evidence that defendant's acts of name calling in the five years leading up to the charges had escalated to the point that Doe asked for a separation in 2015.

### (b) Section 352

Defendant contends the trial court erred in admitting the evidence because any probative value it had was substantially outweighed by its risk of confusing the issues and misleading the jury. We are unpersuaded.

The evidence of the uncharged acts was highly relevant to place the charged offenses in context, to show a pattern of abuse and mistreatment by defendant against Doe in their relationship, and to refute defendant's testimony that he never abused Doe and he merely acted to evade her aggressive behavior. As case law explains, "the Legislature [has] concluded that, in domestic violence cases in particular, a history or pattern of domestic violence is very probative. [¶] ' "The propensity inference is particularly appropriate in the area of domestic violence because on-going violence and abuse is the norm in domestic violence cases. Not only is there a great

8

likelihood that any one battering episode is part of a larger scheme of dominance and control, that scheme usually escalates in frequency and severity. Without the propensity inference, the escalating nature of domestic violence is likewise masked. . . . Since criminal prosecution is one of the few factors which may interrupt the escalating pattern of domestic violence, we must be willing to look at that pattern during the criminal prosecution, or we will miss the opportunity to address this problem at all." ' " (*Kerley*, *supra*, 23 Cal.App.5th at pp. 535–536.)

Defendant contends that the absence of any evidence corroborating Doe's testimony regarding the uncharged incidents rendered the likelihood that they actually occurred less certain. While defendant is correct that one consideration in the section 352 analysis is "the degree of certainty with which the prior instances of domestic violence occurred" (*Kerley*, *supra*, 23 Cal.App.5th at p. 537), it remains the case that "corroboration is not a requirement" (*Mani*, *supra*, 74 Cal.App.5th at p. 372). On this topic, the Evidence Code specifically states: "Subject to a hearing conducted pursuant to Section 352, which shall include *consideration* of *any* corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense." (§ 1109, subd. (d)(3), italics added.)

Even though evidence corroborating Doe's testimony of the uncharged incidents was not required (*Mani*, *supra*, 74 Cal.App.5th at p. 372), there in fact was corroborating evidence for some of those incidents. Defendant himself admitted that he punched holes in the walls and broke things around the house like televisions. Defendant's son testified that he saw his father get angry and that he saw broken objects around the house and holes in the wall. He also hid with Doe—who appeared afraid—in the bathroom at least

9

twice while his father was outside breaking things and cursing. With regard to the October 2018 San Francisco incident, when defendant allegedly pushed Doe's head into the car window while driving home, there were photographs of the injuries she allegedly sustained. Additionally, Doe's mother recalled hearing defendant curse at Doe once prior to 2015, and she testified defendant was physically intimidating toward Doe, such as by backing her into a wall while talking.

Defendant's reliance on *People v. Stanley* (1967) 67 Cal.2d 812 (*Stanley*) and *People v. Ewoldt* (1994) 7 Cal.4th 380 (*Ewoldt*) is misplaced. *Stanley* was a child molestation case that predated the enactment of section 1109. There, the sole prosecution witness "Steven"—who was one of two victims of the charged crimes but was shown by the testimony of others to have a bad reputation for veracity—gave uncorroborated testimony about the defendant's commission of uncharged sex offenses against himself and other alleged victims. (*Stanley*, *supra*, 67 Cal.2d at pp. 814, 819–820.) *Stanley* concluded the trial court's admission of Steven's testimony regarding the uncharged offenses was error because such testimony "was not corroborated by any other evidence" and "in no way strengthened his testimony as to the offenses charged." (*Id.* at p. 819.)

As indicated, *Stanley* was not a domestic violence case and it was decided nearly three decades prior to the enactment of section 1109 and the policy concerns it addressed. In any event, *Ewoldt* observed that *Stanley* had "expressly declined 'to adopt rigid rules' " regarding the admission of uncharged misconduct. (*Ewoldt*, *supra*, 7 Cal.4th at p. 407.) As the high court explained, "uncorroborated testimony by the complaining witness concerning the defendant's uncharged misconduct may have less probative value than testimony that is corroborated or testimony provided by a third

10

party, and the probative value of this evidence must be considered by the trial court in conducting the weighing process mandated by . . . section 352. There will be circumstances, however, in which the uncorroborated testimony of the complaining witness concerning the defendant's uncharged misconduct will be admissible." (*Id.* at pp. 407–408.)

Unlike the situation in *Stanley*, there was evidence corroborating Doe's testimony of some of the uncharged acts. And as *Ewoldt* made clear, the existence of corroborating evidence is not a prerequisite for the admissibility of prior incidents of domestic violence; it is but one consideration in the weighing process. (*Ewoldt*, *supra*, 7 Cal.4th at p. 407; see *Mani*, *supra*, 74 Cal.App.5th at pp. 372–373.)

Defendant also argues the probative value of the uncharged act evidence was lessened, and the risk of confusing the jury increased, because Doe's testimony was "disorganized and disjointed." But the record reflects that Doe's testimony was fairly linear and not, as defendant claims, either disorganized or disjointed. Furthermore, the closing arguments and the verdict forms clarified the specific dates of the charged incidents versus the uncharged acts, thus mitigating any risk of juror confusion.

Defendant claims "the fact that so much of the alleged uncharged conduct went unreported and therefore unpunished created a real danger the jury would believe he escaped punishment for those acts and convict him on that basis." We acknowledge this is another relevant factor in the section 352 analysis. (See *Kerley*, *supra*, 23 Cal.App.5th at p. 539.) But there is nothing in the record suggesting the jury was confused over whether it was deciding to convict defendant for the charged instances of domestic violence or for the uncharged acts. (*Ibid.*) Moreover, given the circumstance that the charged offenses involved acts that resulted in physical injury (which was documented

11

in photographs and corroborated by medical testimony and Doe's medical records), it is highly unlikely that the convictions were based on the jury's desire to punish defendant for his prior non-injury producing conduct.

Finally, we observe that when the trial court instructed the jury concerning uncharged acts, it did not even instruct with the broader statutory definition of domestic violence and abuse applicable to acts occurring within five years of the charged acts; instead, it instructed the jury that it could only consider uncharged domestic violence under the narrower definition of "abuse" in Penal Code section 13700. On this record, we may reasonably infer that the jury did not consider defendant's alleged verbal abuse and other non-injury-producing acts as propensity evidence in any case. In sum, we reject defendant's claim that the trial court prejudicially abused its discretion under section 352.

Before we conclude we take a moment to address defendant's argument that the failure to exclude the uncharged act evidence violated his federal and state constitutional rights to due process and a fair trial. The admission of propensity evidence under section 1109 does not violate due process. (*People v. Merchant* (2019) 40 Cal.App.5th 1179, 1194.) Moreover, the admission of such evidence "is not unfair so long as the trial court is required to balance the probative value of the evidence against its prejudicial impact under . . . section 352." (*People v. Cabrera* (2007) 152 Cal.App.4th 695, 704.) Having found no abuse of discretion under section 352, we reject this constitutional argument.

## B. Exclusion of evidence

Defendant next contends the trial court erred in excluding several pieces of evidence that he claims were relevant to "provide context to the relationship" and to undermine Doe's credibility. Defendant argues the

probative value of such evidence was not substantially outweighed by the risk of prejudice, and the error violated his constitutional right to present a defense. We address each piece of excluded evidence in turn.

### 1. Threatened suicide

First, defendant contends the trial court erred in excluding evidence that Doe threatened to kill herself.

The prosecution moved in limine to exclude mention of Doe's attempt to kill herself. At the hearing, defense counsel indicated he intended to ask a defense witness, who was a longtime friend of defendant, to testify that Doe had threatened to commit suicide if defendant did not come over to talk. Defense counsel, however, did not know any details concerning the timing of the alleged suicide threat. The court granted the prosecution's motion, indicating that absent additional information, the evidence was "too vague" to be admissible. The court stated that it would exclude the evidence under section 352 *without prejudice* to defense counsel's revisiting the topic with more specific information.

We find no error. As a general matter, when a trial court rules against the defense without prejudice, the matter is forfeited if the defense does not reassert its objection. (See *People v. Mills* (2010) 48 Cal.4th 158, 170.) That is, if the defense fails to later renew its objection to the ruling then the court is entitled to assume the defense has abandoned it. (See *ibid.*) Although the court here granted the prosecution's motion to exclude, it did so without prejudice and invited defense counsel to present more specific information to establish the relevance of the excluded evidence. The defense, however, failed to re-raise the issue and thereby forfeited review of this claim. In any event, defendant has not shown that the court abused its discretion by excluding Doe's alleged threat to commit suicide—the evidence of the claimed

13

threat was sparse, and though defendant claims the evidence was relevant to show Doe employed emotionally manipulative tactics to win him back, such a point would have been subsidiary with little or no probative value. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

Defendant's contention that exclusion of this evidence violated his federal constitutional right to present a defense is also forfeited, as he failed to raise this issue below. Even if not forfeited, the claim is meritless. On this record, the relevance of the evidence that Doe threatened to kill herself is speculative and at best subsidiary.

### 2. *DUI convictions*

Next, defendant challenges the exclusion of evidence that Doe had multiple DUI convictions.

The prosecution moved in limine to exclude evidence that Doe was charged with driving under the influence (DUI) in February 2018 (plus additional allegations that she suffered a prior DUI and had an excessive blood alcohol level) and with providing false information to a police officer, and that she ultimately pled to the DUI count plus the excessive blood alcohol level allegation. The defense indicated that it could use the false information charge to show Doe's "propensity to be untruthful," and that the evidence of Doe's February 2018 DUI could bolster its theory of self-defense by showing that Doe became violent toward the end of the relationship. The trial court ruled the conviction for the February 2018 DUI could not come in but the conduct underlying the false information charge could. Later, defense counsel asked whether, if the prosecution were to bring up the DUI, the defense could then bring up the fact that it was her second or third DUI. The trial court indicated the defense could not ask about Doe's 2010 DUI, evidently agreeing with the prosecutor that the prior DUI was irrelevant

14

because it occurred 10 years ago and Doe did not admit the prior DUI allegation when she pled to her 2018 DUI.

On the stand, Doe admitted that she lied to the police about her identity when she was investigated for a DUI in late February 2018, and she also admitted that she pled either guilty or no contest to the February 2018 DUI. The trial court, however, sustained the prosecution's objection when defense counsel asked Doe if it was her first DUI. When defendant subsequently testified that Doe suffered a DUI around the time they first got together in 2010, the court granted the prosecution's motion to strike the testimony.

Defendant now appears to argue that the evidence concerning the 2010 DUI should have been admitted to support the defense theory that Doe became violent and aggressive as a result of her increased drinking. But the 2010 DUI happened before any of the domestic violence reportedly occurred in this case. Thus, this early DUI was not relevant to show Doe became violent and aggressive as a result of drinking. The trial court did not abuse its discretion in excluding this evidence.

Nor did the exclusion of the 2010 DUI evidence violate defendant's federal constitutional right to present a defense. Notably, beyond Doe's admission that she was convicted of a February 2018 DUI, Doe also testified she drove drunk to the police station and hospital on July 31, 2017 and to the hospital on February 3, 2018. Additionally, a defense witness testified Doe drove drunk on August 8, 2018. That defense witness also testified that Doe would drink alcohol and become argumentative and upset at defendant at gatherings, and that she was controlling. Consequently, defendant had plenty of evidence about Doe's drinking habits around the time of the charged crimes and was not deprived of his ability to present his self-defense theory.

15

(*People v. Loker* (2008) 44 Cal.4th 691, 730 [no due process violation in excluding cumulative evidence].)

### 3. *San Francisco Police Department Officer*

Last, defendant challenges the exclusion of certain evidence that Doe "had admitted to being untruthful regarding another domestic violence allegation," namely, the October 2, 2018 San Francisco incident.

During the hearing on the People's motion to admit evidence under section 1109, defense counsel indicated that prior to a second preliminary hearing in the case concerning the alleged October 2018 San Francisco incident, Doe had told a police officer that she lied on the stand during the first preliminary hearing resulting in some charges against defendant being dropped. The court indicated the defense could cross-examine Doe about that, *and if she denied it*, the defense could call the officer to testify about the matter. Later during the same hearing, defense counsel told the court that the officer was available only that upcoming Friday, and counsel asked to call the officer out of order. After a discussion with counsel off the record, the court indicated the parties agreed to see how Doe testified, and the defense could have the officer on call and ready to be called out of order on Friday. On the stand, Doe admitted she lied to the police about the San Francisco incident by stating that she met defendant in the city (though in fact they went together). Doe then testified that she later reported the misinformation. It appears that, in light of the court's conditional ruling and Doe's admission of the lie, the defense did not re-raise the issue of calling the police officer.

Despite acknowledging that Doe admitted on the stand that she lied to the police, defendant contends that Doe "downplayed and explained away her deceit" by saying she did not want to get defendant into more trouble for

16

violating a restraining order.  Defendant claims the San Francisco police officer should have been permitted to testify about Doe's lie and its consequences in order to give the jury "an independent basis to evaluate Doe's credibility."  This is unpersuasive.  Not only did Doe admit she lied to the police, but defendant testified the domestic violence charges in the San Francisco case were dropped, permitting the inference that Doe's lie impacted the prosecution of the domestic violence charges.  Doe also admitted on the stand that she lied to the police on at least two other occasions.  On this record, we cannot say the trial court abused its discretion by excluding additional evidence on the topic.  Indeed, the police officer's testimony had no significant probative value above and beyond Doe's multiple admissions and defendant's testimony.  For the same reason, we reject defendant's claim that exclusion of this evidence violated his federal constitutional right to present a defense.

In sum, we reject defendant's claim that the trial court improperly excluded evidence.

### C.  Cumulative Error and Prejudice

Finally, defendant claims the combined effect of the claimed errors denied him his right to present a defense and resulted in prejudice.  We have found no error, and no prejudice where we have assumed error.  Considered together, the assumed errors remain harmless.  (See *People v. Cain* (1995) 10 Cal.4th 1, 82 ["Defendant was entitled to a fair trial, not a perfect one."].)

### DISPOSITION

The judgment is affirmed.

_____

Fujisaki, J.

WE CONCUR:


_____

Tucher, P.J.


_____

Petrou, J.