Filed 11/10/15  P. v. Rollins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068475 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1301049) |
| ANTHONY ROLLINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County,

Michael J. Rushton, Judge.  Affirmed as modified.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew S.

Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Anthony Rollins of torture, two counts of corporal injury to a cohabitant and conspiracy to dissuade a witness. It also found true special allegations that Rollins personally inflicted great bodily injury upon the victim under circumstances involving domestic violence. The trial court sentenced him to an indeterminate term of seven years to life for the torture conviction and a determinate term of seven years for the remaining counts.

Rollins appeals, contending the trial court abused its discretion by admitting other prior acts of domestic violence. He also asserts the trial court improperly sentenced him to "7 years to life" for his torture conviction when the court should have sentenced him to "life with the possibility of parole." We reject both contentions. Rollins also asserts, the Attorney General concedes, and we agree, that a sentencing error and clerical error in the abstract of judgment need to be corrected. Accordingly, we affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

*Background*

Jane Doe started dating Rollins in 2008. In 2009 they moved in together with her daughter and Rollins's son, Shaun. In 2009, the couple had an argument that resulted in Rollins choking Doe as he held her over a stair railing. In 2010, Rollins pushed Doe to the ground, kicked her in the stomach and then walked away. Doe called the police for both incidents. In 2011, the couple argued after Doe answered Rollins's phone and a female was on the other line. Rollins struck Doe's mouth with a cable box remote, causing her mouth to bleed.

2

*The Incident*

In 2012, Doe and a friend went to a tasting event at a brewery. While at the tasting, Doe received a text from Rollins stating, "Don't suck too much dick while you are gone. Also, I hope you have a sitter for your daughter tomorrow." Doe and her friend then met another friend for dinner. Both friends stated Doe did not appear intoxicated and showed no problems walking or talking. According to Shaun, Doe arrived home, went upstairs and asked for Rollins. Doe walked and talked normally and did not appear intoxicated. Shaun told Doe that Rollins was in the bedroom. Doe went into the bedroom and closed the door.

Doe woke up in severe pain and vomiting repeatedly, but she could not remember what had happened. The following day, Doe complained of a very severe headache and had slurred speech. The next day, Rollins took Doe to the hospital. Doe told a doctor that she had fallen, but she was amnesic to the events that led up to her injuries. Doe could not remember leaving the bar, what time she left, or who drove her home. She had only two memories from that night, she remembered arguing with Rollins and seeing him cut off the heads of two teddy bears.

A neurosurgeon diagnosed Doe as suffering from a fracture in her temple bone and contusions on both sides of her brain. Doe spent four days in the hospital and later moved back with her family.

A few weeks after the incident, Doe noticed that her old phone had a voicemail from Rollins, recorded after she had gotten home on the night of the incident, which she had not listened to. In the voicemail, Rollins's and Doe's voices could be heard. Doe stated that her face hurt and that she wanted to leave. Rollins told Doe, "You're not about to leave. Nope" and "Promise you. You're gonna make it worse. Stop crying." Doe reiterated that her face hurt, then stated, "Help me. It hurts. Ow — no. Please stop. It hurts. It hurts. I said no." Rollins then told Doe to, "Shut the fuck up." Crying and screaming could be heard throughout the recording.

Doe called the police about the incident and Rollins was arrested. The day of Rollins's arrest, Doe received a text message from a friend of Rollins's brother stating Rollins loved Doe and wanted to go to Vegas with her to get married.

*In Limine Motion Regarding Prior Acts of Domestic Violence*

The prosecution moved in limine to introduce Rollins's prior acts of domestic violence against five of his former girlfriends as propensity evidence under Evidence Code section 1109. (Undesignated statutory references are to the Evidence Code.) The prosecution also asserted this evidence was admissible to demonstrate his intent, motive, common plan or scheme, and lack of mistake or accident under section 1101, subdivision (b). After argument by both parties regarding each individual victim of prior domestic violence, the trial court admitted the evidence under section 1109. The trial court found the evidence of the prior domestic violence was more probative than prejudicial within the meaning of section 352. The trial court also allowed the evidence that Rollins

4

proposed to J.W., one of his former girlfriends, following a domestic violence incident to demonstrate his intent under section 1101, subdivision (b).

*The Trial*

A medical expert who reviewed Doe's hospital records testified to the severity of Doe's injuries. He stated that Doe suffered a "very serious injury." He opined that it would take a high impact force to fracture the bone in her head; however, he could not say with certainty how the fracture occurred.

Five of Rollins's former girlfriends testified. Briefly, J.H. began dating Rollins in 1993 and gave birth to his child two years later. When Rollins learned of the pregnancy the couple had an altercation where J.H. kicked Rollins and Rollins then punched J.H. with his fist in her abdomen, knocking the air out of her and causing her to fall to the ground. The couple broke up about five months after their son Shaun was born. When Shaun was about eight or nine years old, Rollins tossed J.H. out of a doorway causing her to slide across the floor and into a kitchen table.

A.G. and Rollins began dating in 2002 and have two children together. At one point, Rollins dragged A.G. into a hallway, hit her in the face with a bag filled with hard, heavy objects and later choked her with one hand.

Rollins began living with J.W. in 2005. At one point, after accusing J.W. of "having an attitude," Rollins held her up against a wall with his hand squeezing her throat. According to J.W., Rollins physically abused her about 50 times during their relationship. One incident resulted in J.W. being admitted to the hospital for a crushed larynx and detached retina. Rollins was arrested and a restraining order was issued

5

against him. He later left a rose and a diamond ring for her. He told her it was a marriage proposal and if they got married there was a law that would prevent her from testifying against him in court.

In 2007, Rollins lived with S.H. At one point, Rollins swung S.H. by her hair, grabbed her throat with his hand and later used both hands around her throat. He also threw a boot at S.H. striking her in the nose, causing it to bleed. During another incident, Rollins shoved S.H. to the ground and then kicked her several times.

Rollins began seeing P.A. in 2006. They never lived together, but ultimately had a child together. In 2007, the couple drank tequila in a hotel room. The following morning, P.A. had a bad headache and the side of her head was painful to the touch. Rollins admitted that he had hit her with his fist.

Rollins testified that on the night of the incident he heard Doe come home. After hearing a "commotion," he went to the top of the stairs and saw Doe getting up. It looked like she had stumbled. He could tell Doe had been drinking. The couple later had a verbal argument. Rollins denied hitting or choking Doe. He believed Doe's injuries were the result of an accident.

## DISCUSSION

### I. *Propensity Evidence*

A. Legal Principles

Although evidence of prior criminal acts is generally inadmissible to show the defendant's propensity to commit the charged offense (§ 1101, subd. (a)), the Legislature has created an exception to this rule in cases of domestic violence for evidence of a

defendant's commission of other acts of domestic violence (§ 1109, subd. (a)(1)). "[T]he statute reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation. [Citation.] Indeed, proponents of the bill that became section 1109 argued for admissibility of such evidence because of the 'typically repetitive nature' of domestic violence. [Citation.] This pattern suggests a psychological dynamic not necessarily involved in other types of crimes." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532; fns. omitted.)

The statute establishes a presumptively admissible time frame and permits the introduction of acts occurring within 10 years of the charged offense; older offenses may also be admitted if the court finds their admission to be in the interest of justice. (§ 1109, subd. (e).) The statute also incorporates section 352, "mak[ing] evidence of past domestic violence inadmissible only if the court determines that its probative value is 'substantially outweighed' by its prejudicial impact. We review a challenge to a trial court's decision to admit such evidence for abuse of discretion." (*People v. Johnson*, *supra*, 185 Cal.App.4th at p. 531, fn. omitted.)

B. Analysis

Rollins asserts the court erred under sections 1109, 1101 and 352 in admitting evidence of the allegations of physical abuse against his ex-girlfriends for the purpose of proving his propensity to commit the crimes charged in the instant offense. Rollins argues the probative value of the evidence of the prior "bad acts" of domestic violence was outweighed by the danger of undue prejudice and the evidence was so cumulative

7

that he could not have received a fair trial. He also complains that the trial court did not conduct the "closely reasoned" weighing process mandated by section 352. We disagree.

As a preliminary matter, the trial court concluded that Rollins's proposal to J.W. following a domestic violence incident and the incident regarding P.A. where she awoke in pain not knowing what had happened to her were admissible to demonstrate intent and common scheme, respectively, under section 1101, subdivision (b). Although Rollins claims error under section 1101, he has not argued that the trial court erred in admitting the marriage proposal; thus, we need not address this issue. Also, as will be discussed, the trial court properly admitted the evidence regarding P.A. under section 1109. Accordingly, there is no need for us to address application of section 1101 for the incident regarding P.A.

Domestic violence includes abuse committed against a cohabitant or a person with whom the suspect has had a dating relationship, and is defined as the intentional or reckless "causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury . . . ." (Pen. Code, § 13700, subds. (a) & (b).) Here, all of the prior incidents regarding Rollins's former girlfriends (the prior incidents) qualified as acts of domestic violence. Although the events regarding A.G. and J.H. were more than 10 years old, the trial court found these incidents were admissible in the interest of justice (§ 1109, subd. (e)), and Rollins did not challenge these findings.

8

Accordingly, the question presented is whether the trial court erred in admitting the prior incidents under section 352. Rollins first complains the trial court failed to engage in the weighing process required under section 352. "[A]lthough the record must affirmatively show that the trial court weighed prejudice against probative value in admitting evidence of prior bad acts [citations], the trial judge 'need not expressly weigh prejudice against probative value—or even expressly state that he has done so.' " (*People v. Padilla* (1995) 11 Cal.4th 891, 924.) Rather, we can infer the trial court conducted the weighing process based on record indications such as argument of counsel and comments by the trial court. (*Ibid.*) The record in this case, including counsel's arguments and the trial court's comments, clearly show the trial court was aware of the balancing required under the governing statutes and engaged in such a process.

While the prior incidents were inflammatory, they were no more inflammatory than the incidents regarding Doe, so that the potential for prejudice did not outweigh the clear probative value of the evidence. (*People v. Johnson*, *supra*, 185 Cal.App.4th at p. 534, fn. 11 ["Courts are primarily concerned where the past bad act was 'more inflammatory' than the offense for which the defendant is on trial."].)

Rollins complains that evidence of the prior incidents was cumulative. We agree. However, it is the cumulative nature of the prior incidents that makes the evidence highly relevant and probative. Doe could not recall what caused her injuries and Rollins denied hitting her. Together, the prior incidents set forth "a continuous and fairly unbroken pattern of domestic abuse" and create a strong inference that Doe's injuries were not the

9

result of an "accident" as Rollins claimed. (*People v. Cabrera* (2007) 152 Cal.App.4th 695, 706.)

The testimony of Rollins's five former girlfriends consists of less than 300 pages of trial testimony for a trial that amounted to about 1,060 pages of trial testimony or 28 percent of the testimony. While this testimony was time-consuming based on the number of witnesses, the testimony of each witness was relatively brief and the time consumed was not undue. (*People v. Frazier* (2001) 89 Cal.App.4th 30, 42 [evidence of uncharged offense that consumed 27 percent of trial transcript did not dwarf the trial of the current offense as to unfairly prejudice the defendant].)

Finally, the prior incident evidence would not confuse the jury. The trial court properly instructed the jury with CALCRIM No. 852, informing the jurors that, if it concluded Rollins committed the uncharged acts of domestic violence, this was not sufficient by itself to prove he was guilty of any of the charges involving Doe, but the People were still required to prove each charge beyond a reasonable doubt. Juries are presumed to follow the trial court's instructions, unless the record affirmatively indicates otherwise. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 83.)

Accordingly, we conclude that admission of the prior incident evidence was not unduly prejudicial and did not result in an unfair trial.

## II. *Sentence for Torture*

The trial court sentenced Rollins on count 1 for torture to an indeterminate life sentence of seven years to life. Torture is punishable by a prison term of life. (Pen.

Code, § 206.1.)  The minimum parole eligibility for a life term is seven years where, as here, a minimum term is not specified.  (Pen. Code, § 3046, subd. (a)(1).)

Rollins contends his sentence should be corrected to reflect "life with the possibility of parole."  He contends that should Penal Code section 3046 be amended to provide a minimum term of less than seven years the Department of Corrections and Rehabilitation might conclude that such an amendment would not affect his sentence because he was "sentenced" to seven years to life, and not "life with the possibility of parole."  He notes that our high court in *People v. Jefferson* (1999) 21 Cal.4th 86 (*Jefferson*) stated it is not improper for a trial court to specify a minimum parole eligibility term in its pronouncement of sentence, but asserts this discussion is dicta.  (*Id.* at p. 101, fn. 3.)  The Attorney General, relying on *Jefferson*, asserts there is no error. We agree with the Attorney General.

The *Jefferson* opinion notes that the term of imprisonment for premeditated attempted murder is an indeterminate sentence of life with the possibility of parole. (*Jefferson*, *supra*, 21 Cal.4th at p. 93.)  The Court observed that under normal circumstances the minimum period of confinement for that crime would be seven years, as provided in Penal Code section 3046, subdivision (a)(1), but that Penal Code section 186.22, subdivision (b)(4) provides for a mandatory minimum term of 15 years for a gang-related attempted murder.  (*Jefferson*, at pp. 96, 100.)  It was held that the trial court did not err by imposing a sentence of 15 years to life, which expressly incorporated the minimum term established by Penal Code sections 186.22 and 3046, subdivision (a)(2). (*Jefferson*, at pp. 99-102.)

11

In a footnote, our high court stated that, "[b]y including the minimum term of imprisonment in its sentence, a trial court gives guidance to the Board of Prison Terms regarding the appropriate minimum term to apply, and it informs victims attending the sentencing hearing of the minimum period the defendant will have to serve before becoming eligible for parole. Thus, when the trial court here pronounced defendants' sentences, it properly included their minimum terms." (*Jefferson*, *supra*, 21 Cal.4th at p. 101, fn. 3.)

The reasoning in *Jefferson* applies here as the indeterminate life sentence mandated by Penal Code section 206.1 is subject to a minimum confinement period of seven years under Penal Code section 3046, subdivision (a)(1). We reject Rollins's speculative argument that should Penal Code section 3046 be amended to specify a lesser minimum term, he would be entitled to retroactive application of this change. Generally, if a criminal statute is amended to lessen punishment, and the amended statute becomes effective prior to the date the judgment of conviction becomes final, the amended statute, and not the old statute in effect when the prohibited act was committed, applies. (*People v. Nasalga* (1996) 12 Cal.4th 784, 789-790; Pen. Code, § 3 ["No part of [the Penal Code] is retroactive, unless expressly so declared."].) Rollins has shown no error as he has provided no reasoned argument with citation to authority as to why a future change to Penal Code section 3046 should impact his judgment once it becomes final. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Kemp* (1974) 10 Cal.3d 611, 614 [judgment becomes final when availability of an appeal and time for filing a petition for certiorari have expired].) Accordingly, we decline to alter the judgment.

### III. *Sentencing and Clerical Errors*

#### A. Sentencing Error

The trial court sentenced Rollins to seven years to life on count 1 for torture. On count 2, infliction of corporal injury on a cohabitant, the trial court found that the count involved the same conduct as count 1 and that Penal Code section 654 applied. Despite this finding, the trial court ordered that the sentence on count 2 be served concurrently with the sentence on count 1. The parties agree the trial court erred in not staying the sentence on count 2. We concur.

Where, as here, Penal Code section 654 applies to prohibit multiple punishments, the correct procedure is to impose sentence on each count and stay execution of sentence on the count to which Penal Code section 654 applies, rather than impose concurrent sentences. (*People v. Deloza* (1998) 18 Cal.4th 585, 591-592.) Accordingly, Rollins's sentence on count 2 must be stayed and the sentencing minute order and abstract of judgment amended.

#### B. Clerical Error

The abstracts of judgment list all of Rollins's offenses as having been committed in 2012. Rollins correctly notes that count 3 occurred in 2011 and count 4 occurred in 2013. The Attorney General concedes, and we agree, the abstracts of judgment should be corrected to remedy these errors.

DISPOSITION

The judgment is modified to stay execution of the concurrent four-year term on count 2 (infliction of corporal injury on a cohabitant) under Penal Code section 654. The abstract of judgment shall be modified to show that count 3 occurred in 2011 and count 4 occurred in 2013. The judgment is affirmed as modified. The superior court clerk is directed to prepare a new sentencing minute order and new abstracts of judgment reflecting these changes and forward a certified copy of the new abstract to the Department of Corrections and Rehabilitation.


McINTYRE, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.

14